**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

YURI JHOANA GUTIERREZ AROCA,
ARLEY CABRERA VALENZUELA,

          Petitioners,

v.                                       CIVIL ACTION NO.  2:26-cv-00057

CHRISTOPHER MASON, et al.,

          Respondents.

**MEMORANDUM OPINION AND ORDER**

On February 5, 2026, this court held a show cause hearing and granted Petitioners' Petition for Writ of Habeas Corpus, [ECF Nos. 29, 30]. In that Order the court "**DIRECTED** [Respondents] to return all seized personal items of the Petitioners." [ECF No. 30, at 2]. On March 20, 2026, Petitioners filed a motion to enforce the court's order, hold Respondents in civil contempt, and impose sanctions, [ECF No. 35], because not all of the Petitioners' property has been returned.

Specifically, Petitioners assert that the following items remain missing: (1) both Petitioners' "driver identification documents," and (2) Petitioner Guttierrez Aroca's "passport, social security card, and Colombian governmental identification." [ECF No. 35, at 1]. Further Petitioners assert that their "employment authorization documents were not returned to them," but after more than five weeks, they were provided replacement employment authorization documents on March 14, 2026. [ECF No. 35, at 2].

1

Petitioners move for an "order that federal Respondents show cause as to why they should not be held in contempt and return all of Petitioner's property **immediately**," impose a fine if Respondents do not immediately return the property, and further order remedial sanctions for any other loss Petitioners suffered as well as attorneys' fees. *Id.*

On March 23, 2026, the court ordered the Respondents to respond to the Petitioners' motion, investigate the loss of property, and file an investigative report with the court. [ECF No. 36]. After a series of unopposed continuances, [ECF Nos. 37, 40, 43], the matter is finally ripe for review.

In response to Petitioners' motion, Respondents assert that the court lacks jurisdiction over this issue because the Small Claims Act governs the administrative recovery of Petitioners' property; sovereign immunity protects Respondents from monetary sanctions; Petitioners must otherwise comply with the Federal Total Claims Act ("FTCA"); and the Respondents are not subject to civil contempt. [ECF No. 39, at 2]. In reply, Petitioners argue that the FTCA is inapplicable, the Small Claims Act is inapplicable, and that the court has jurisdiction over civil contempt. [ECF No. 44].

As directed, Respondents filed their report of the missing property and Respondent's efforts to locate it through a sworn declaration by Officer David Kluemper. [ECF No. 46-1]. Officer Kluemper is the "Supervisory Detention and Deportation officer (SDDO), for the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO)." [ECF No. 46-1, ¶ 1].

On June 15, 2026, the court held a show cause hearing on Petitioners' motion. Counsel for the Petitioners, counsel for the Federal Respondents, and Officer Kluemper were all present. At the hearing, counsel for Petitioners conceded that Respondents' efforts to locate the missing

documents were thorough, but counsel primarily argued that Respondents failed to take all reasonable efforts by not searching other immigration offices in Texas or Philadelphia. Petitioners' counsel did not dispute Officer's Kluemper's sworn declaration but instead argued that it was insufficient. Counsel for Respondents asserted that they took all reasonable efforts in good faith to locate the missing property, precluding them from a finding of civil contempt.

For the reasons that follow, the Petitioners' Motion for Civil Contempt, **[ECF No. 35]**, is **DENIED**, and Respondents' Motion to Dismiss, **[ECF No. 38]**, is **DENIED as moot**. Although civil contempt is the appropriate legal basis for Petitioners' claim, and Petitioners have established a prima facie case for civil contempt, the Respondents have properly established a defense to civil contempt by taking all reasonable efforts in good faith to comply with the court's order.

## I.    Federal Tort Claims Act

The jurisdictional requirements of a claim under the FTCA are adequately explained in the Fourth Circuit's opinion *Estate of Van Emburgh v. United States*. The court observed the following:

> "As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The FTCA provides a waiver of sovereign immunity for damages suits related to certain actions by federal employees that occur within the scope of their employment. *See* 28 U.S.C. §§ 1346(b)(1), 2674.

> When filing suit under the FTCA, plaintiffs must satisfy certain jurisdictional prerequisites. *See Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986). One such jurisdictional prerequisite is the administrative exhaustion requirement. 28 U.S.C. § 2675.2

> This administrative exhaustion requirement contains three elements. First, a plaintiff must "present[ their] claim to the appropriate Federal agency[.]" *Id.* § 2675(a). Second, when a plaintiff presents their claim to the agency, the plaintiff must state the sum they are seeking for their claim. *Id.* § 2675(b) ("A[n a]ction under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency[.]"). Third, the plaintiff must wait either for the claim to be "finally denied by the agency" or for the agency to fail "to make final disposition of [the] claim within six months after it is filed." *Id.* § 2675(a).

3

95 F.4th 795, 800–01 (4th Cir. 2024) (footnote omitted).

Here, Respondents assert that the Petitioner's FTCA claim must fail because Petitioners have not exhausted their administrative remedies under the FTCA as described above. [ECF Nos. 39, 45]. The problem with this argument, as Petitioners explain, is that they have not "instituted" a claim under the FTCA. *See* [ECF No. 44, at 2]. Rather, Petitioners move "to enforce this Court's prior judgment ordering the return of their property seized pursuant to their unlawful arrest . . . pursuant to this Court's civil contempt authority." *Id.* Therefore, I find that Plaintiff's requested relief arises from principles of civil contempt, and I decline to apply the FTCA to their motion.[1]

## II.    Civil Contempt

Sanctions for civil contempt are appropriate "'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (first quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988) and then citing *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04 (1947)). Sanctions for civil contempt, however, may not be punitive. *In re General Motors Corp.*, 61 F.3d at 259.

To succeed on a motion for civil contempt, the moving party must establish by clear and convincing evidence four elements:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

---

[1] That is not to say Petitioners may not be successful on a properly raised and administratively exhausted FTCA claim.

4

*De Simone v. VSL Pharmaceuticals. Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)).

Taking the elements in turn, Petitioners have established a prima facie case by clear and convincing evidence. On February 5, 2026, the court granted Petitioners' habeas petition, ordered their release, and directed Respondents "to return all seized personal items of the Petitioners." [ECF No. 30, at 2]. The court also ordered that the Clerk send a copy of its order to record counsel as well as the United States Attorney's Office for the Southern District of West Virginia. *Id.* According to his sworn declaration, Officer David Kluemper asserts that the Petitioners were released, "[i]n compliance with this Court's February 5, 2026, Order." [ECF No. 46-1, at 3]. On February 6, 2026, the Petitioners' "property was returned." *Id.* Accordingly, the court finds that there was "valid decree" that the Respondents had knowledge of.

Second, the order to release and return their belongings was clearly in Petitioners' favor. Third, Respondents violated the court's order by failing to return all of Petitioners' property seized at their detention. Officer Kluemper stated that he "was unable to locate Aroca's file and [has] been unable to locate her Employment Authorization Documents, passport, temporary driver's license, social security card, or Columbian identification." [ECF No. 46-1, ¶ 32]. And further, albeit diligent, efforts did not succeed.[2] *Id.* ¶¶ 34, 35, 38, 40, 41, 47. Lastly, the loss of property—identification documents that are difficult to replace—have harmed the Petitioners.

Considering the valid decree, Respondents' knowledge, the violation of the court's order, and the harm to the Petitioners, I find that the prima facie case of civil contempt has been established.

---

[2] The court does not find, nor does it need to, that the Respondents were willful in their violation. Indeed, "[t]he absence of wilfulness does not relieve from civil contempt." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

### III.    Defenses for Civil Contempt

Still, "civil contempt is a 'severe remedy.'" *Taggart v.* Lorenzen, 587 U.S. 554, 561 (2019) (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). Once the moving party meets its burden, the burden then shifts to the nonmoving party "to demonstrate that [it] had 'ma[de] in good faith all reasonable efforts to comply with' the court's [order]." *United v. Ali*, 874 F.3d 825, 832 (4th Cir. 2017) (quoting *United States v. Darwin Const. Co., Inc.*, 873 F.2d 750, 754–55 (4th Cir. 1989)). In addition to good faith and reasonable efforts, two other defenses exist for alleged contemnors. Substantial compliance precludes civil contempt:

> Substantial compliance with a decree is a defense to civil contempt. *United States v. Darwin Constr. Co.*, 873 F.2d 750, 754 (4th Cir. 1989). "Substantial compliance is found where all reasonable steps have been taken to ensure compliance: inadvertent omissions are excused only if such steps were taken." *Id.* at 755 (cleaned up).

*De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 530 (4th Cir. 2022). Inability to comply also constitutes a defense to civil contempt. *Consolidation Coal Co. v. Local 1702, United Mineworkers of America*, 683 F.2d 827, 832 (4th Cir. 1982). The issue before the court is resolved in consideration of the first defense—Respondents, through Officer Kluemper, have demonstrated that good faith reasonable efforts have been made to comply with the court's order.

I first consider what it means to make "in good faith all reasonable efforts to comply" with a court's order. *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017). By its nature, the good-faith-plus-reasonable-efforts defense is case-specific and fact-intensive because the steps reasonably required depend on the order, the means of compliance available to the party, the obstacles encountered, and the party's response to known or reasonably discoverable deficiencies. *See Darwin Const. Co.*, 873 F.2d at 754–56; *De Simone*, 36 F.4th at 529–30. The standard does not demand perfect compliance, but it requires more than some effort or a professed intention to

6

comply: the party must take every reasonable step available under the circumstances to achieve and ensure compliance. *Darwin Const. Co.*, 873 F.2d at 754–55; *Ali*, 874 F.3d at 831–32.

Good faith, in this context, means an honest effort manifested through objectively reasonable and diligent conduct directed toward compliance. Subjective sincerity, an innocent mistake, or the absence of willfulness does not alone establish the defense. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *see McLean v. Central States, Southeast & Southwest Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985). Reasonable efforts may include determining precisely what the order requires, investigating likely sources of noncompliance, using available means to cure deficiencies, monitoring continued compliance, responding promptly when deficiencies are identified, and producing competent evidence documenting those efforts. *See Ali*, 874 F.3d at 831–32; *De Simone*, 36 F.4th at 529–30. By contrast, partial compliance, conclusory or unsworn assertions, failure to search obvious sources, failure to monitor matters within the party's control, delay until another party identifies the violation, or disregard of known deficiencies does not amount to "all reasonable efforts." *See Ali*, 874 F.3d at 831–32; *Darwin Construction*, 873 F.2d at 754–55; *De Simone*, 36 F.4th at 529–30; *United States v. Walden*, No. 1:16-CV-42, 2019 WL 1028529, at *2–5 (N.D. W. Va. Mar. 4, 2019) (Keeley, J.); *West Virginia Highlands Conservancy v. Lexington Coal Co.*, No. 3:19-cv-0573, 2023 WL 8006418, at *5–7 (S.D. W. Va. Nov. 17, 2023) (Chambers, J.).

It makes sense that the language used to describe this defense is general but aspirational—indeed, compliance with a court order is paramount to the rule of law and a foundational principle of our government. Still, applying this analysis looks different in every case. And here, the context is especially important: this matter began as a petition for habeas corpus. "In England, as in the United States, the chief use of habeas corpus has been to seek the release of persons held in actual,

physical custody in prison or jail." *Jones v. Cunningham*, 371 U.S. 236, 238 (1963).[3] "The 'heart of habeas corpus' is the challenge to a petitioner's confinement (or the duration of his confinement), where he seeks 'immediate release or a speedier release from that confinement.'" *Larrazabal-Gonzalez v. Mason*, 818 F. Supp. 3d 794, 799 (S.D. W. Va. 2026) (Goodwin, J.) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973)). *See also Briceno Solano v. Mason*, 818 F. Supp. 3d 802, 815 (S.D. W. Va. 2026) (Johnston, J.); *Umarov v. Mason*, No. 2:26-cv-00081, 2026 WL 381614, at *2 (S.D. W. Va. Feb. 11, 2026) (Berger, J.); *Simanca Gonzalez v. Aldridge*, No. 3:26-cv-00055, 2026 WL 313476, at *2 (S.D. W. Va. Feb. 5, 2026) (Chambers, J.).

Accordingly, in this case, I conclude that the good faith reasonable efforts defense necessarily requires the Respondents to show the timely attempt to comply with the court's order, all steps taken to comply with the court's order (with the date, time, and result of each action), all agency communication about the court's order and Respondents' compliance, a complete report on any barrier to compliance (and the responsive steps taken to eliminate such barriers), and Respondents' own attempts to remediate any failure of compliance before the court must take action.[4]

Here, Officer Kluemper swears by declaration that the local ICE office took considerable steps to locate Petitioners' property. [ECF No. 46-1]. After cataloging the intake procedure for the detained Petitioners, Officer Kluemper asserts that they were released on February 5, 2026, and given back their property on February 6, 2026, in compliance with the court's order. *Id.* ¶¶ 14–15.

---

[3] *See also Boumediene v. Bush*, 553 U.S. 723, 739 (2008) ("The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom.").

[4] In a habeas case, filed because of Petitioners' illegal detention in the Southern District of West Virginia, the Respondents are not, however, required to turn over every office from Texas to Philadelphia—a holding sought by the Petitioners. This would transform the reasonableness test into a perfection test for which no defense could shield Respondents from being held in contempt.

Only two days later did Officer Kluemper receive notice from Petitioners' counsel that not all of their property was returned. *Id.* ¶ 16. The search for Petitioners' missing property began the next day. *Id.* ¶ 17.

Officer Kluemper requested the location of Petitioners' identification documents, determined that they were in Texas pursuant to Petitioners' anticipated (but halted) transfer, and requested the return of those files. *Id.* ¶¶ 18–20. Officer Kluemper, a few days later, requested that all officers of the Poca, West Virginia immigration office search their workstations. *Id.* ¶ 23. He also reached out to Assistant Field Office Director Joseph Gigliotti for assistance and learned that the records "should be in transit to Philadelphia Records." *Id.* ¶ 24.

Eventually a file for Petitioner Valenzuela was located and sent to Officer Kluemper, but it did not contain all of Petitioner's missing documents. *Id.* ¶¶ 27–30. Nor could the immigration office's system track Petitioner Aroca's file, as it is suspected to be a "working file" not a physical file to be tracked. *Id.* ¶¶ 31–32. Nonetheless, Officer Kluemper asked the South-Central Regional Jail for any identity documents, but none were found. *Id.* ¶ 33. Officer Kluemper also searched the Poca property room, and spoke with the team lead Deportation Officer Rodney Nichols who "recalled identity documents were placed in the file," but it could not be located. *Id.* ¶¶ 35–38.

Officer Kluemper sent another Poca office-wide email requesting "all officers and staff look in their work areas for [Petitioner] Aroca's missing file." *Id.* ¶¶ 39–40. And another office-wide search on June 3, 2026, did not turn up any documents. *Id.* ¶ 41.

Officer Kluemper also attempted to remediate the Petitioners for their lost property. Employment Authorization Documents were provided to Petitioners. *Id.* ¶ 42. And Petitioners' counsel was informed of the ways to obtain replacement documents for their driver's licenses, social security cards, and Colombian identification documents. *Id.* ¶¶ 44–46.

9

Considering all of the swift actions taken, as identified by Officer Kluemper, I find that Respondents acted in "good faith" to make "all reasonable efforts to comply with" the court's order.[5] *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017). Accordingly, the court declines to hold Respondents in civil contempt. Petitioners' Motion, **[ECF No. 35]**, is **DENIED**, and Respondent's Motion to Dismiss, **[ECF No. 38]**, is **DENIED as moot.**

## IV.    Conclusion

At least here, the court finds that Respondents made all reasonable efforts in good faith to comply with the court's order for the return of Petitioners' property. Still, I am troubled by the procedures inflicted upon detained noncitizens. This is not the first case where a petitioner's property disappeared somewhere between his detention and release.[6] Perhaps realizing that this bureaucratic circus is unsustainable, Officer Kluemper asserts that the immigration office has "changed the manner in which travel documents and foreign identification documents are stored." [ECF No. 46-1, ¶ 49]. Now, copies of documents "are placed in an individual's file" while "physical documents are then stored with the rest of an individuals' property, for which there is a written record" that provides "an itemized list of the property being stored." *Id.* The court is confident that this improved procedure will result in complete property management and no loss of property.

---

[5] I commend the actions of Officer Kluemper to rectify this mistake of lost property. His declaration demonstrates a thorough and swift search for Petitioners' property.

[6] *Serna Zareta v. Mason*, No. 2:26-cv-00069, [ECF No. 54] (S.D. W. Va. Mar. 5, 2026) (Johnston, J.) (The court held a show cause hearing, for which Officer Kluemper was present, over the loss of a petitioner's cell phone.).

10

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

The court further **DIRECTS** the Clerk to post a copy of this Memorandum Opinion and Order on the court's website, www.wvsd.uscourts.gov.

ENTER:                    August 11, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

11